McClung v. Embreeville, etc., Co.

McClung    v.    Embreeville,    etc.,    Co.

(*Knoxville.*    October    4,    1899.)

1. CONSTITUTIONAL·LAW.    *Privileges and immunities of citizens of other States.*

Under that provision of the Federal Constitution which guarantees to the citizens of each State all the privileges and immunities of·citizens in the several States, a State Legislature is forbidden to pass a statute securing to resident creditors of an insolvent foreign corporation priority over creditors of the same class who reside in other States of the Union, in the distribution of its assets, and hence Sec. 5, Ch. 31, Acts 1877, which undertakes to accomplish this result, is to that extent unconstitutional and void. (*Post, pp. 400–406.*)

Constitution construed: Art. IV, Sec. 2 (U. S.).

Act construed: Acts 1877, Ch. 31.

2. SAME.    *Corporation is not a citizen.*

A corporation is not a citizen within the meaning of that clause of the Federal Constitution which guarantees to the citizens of each State all privileges and immunities of citizens in the several States. Hence Sec. 5, Ch. 31, Acts 1877, is operative against corporations of other States and against residents of foreign countries. (*Post. p. 401.*)

Constitution construed: Art. IV., Sec. 2 (U. S.).

Act construed : Acts 1877, Ch. 31.

3. *FOREIGN CORPORATION.    *Distribution of its assets among creditors.*

Where a foreign corporation becomes insolvent, leaving assets in this State for distribution, having creditors resident in this State and in foreign countries, and in other States of the Union, including in the latter class a corporation, the rights of the several classes of creditors are declared to be as follows:

---

*This opinion, so far as it gave any preference to creditors of this State over creditors of other States of the Union, was reversed and overruled by the Supreme Court of the United States.—REPORTER.

McClung *v.* Embreeville, etc., Co.

(1) Creditors, except the corporation, residents of other States of the Union, are entitled to a *pro rata*, to be ascertained by an equal division of the entire fund for distribution among all the creditors of the said several classes.

(2) The creditors resident in this State are entitled, in addition to the *pro rata* received by creditors who are residents of other States, by virtue of Acts 1877, Ch. 31, Sec. 5, to such sums out of the *pro rata* assigned to the creditors resident in foreign countries, and to the corporation resident in another State of the Union, as will fully satisfy their claims.

(3) Creditors of foreign countries and the corporation of another State take equally with creditors of other States of the Union, but take nothing as against Tennessee creditors until the latter are fully paid. (*Post, pp. 400–406.*)

---

FROM WASHINGTON.

---

Appeal from Chancery Court of Washington County. JOHN P. SMITH, Ch.

GREEN & SHIELDS and KIRKPATRICK, WILLIAMS & BOWMAN and A. S. DEADERICK for McClung & Co.

TULLY R. CORNICK for Rogers, Brown & Co.

BEARD, J. This case, as presented now, involves alone a controversy between adversary counsel with regard to the nature of the decree which should be entered under the mandate of the Supreme Court of the United States.

The Embreeville Freehold, Land, Iron and Railway Company (limited), a corporation organized under the laws of Great Britain and Ireland for

mining and manufacturing purposes, after register-
ing its charter in this State, as required by Chap-
ter 31, of the Acts of 1877, began business which
in a few years ended in insolvency. In 1893
the present complainants filed the bill in this
cause as a general creditors' bill for the purpose
of winding up the insolvent corporation. Among
its creditors were citizens of the State of Ten-
nessee, citizens of other States of the United
States, and citizens of Great Britain and Ireland.
The cause was regularly conducted as an insolvent
proceeding until, the case having reached this
Court, a final decree was pronounced, in which,
among other things, it was adjudged that, under
the fifth section of the Act already referred to,
Tennessee creditors had a priority in the distri-
bution of the assets of the corporation over sim-
ple contract creditors of all other countries. The
effect of this decree was to place creditors, whether
citizens of other States of the United States or citi-
zens of foreign countries, upon the same footing, and
to postpone all alike until the Tennessee creditors
were fully satisfied. Among the creditors affected
by this decree were C. G. Blake and Rogers,
Brown & Company, citizens of the State of Ohio, and
the Hull Coal and Coke Company, a corporation
of Virginia, who were of the class of simple
contract creditors of this insolvent corporation.
Being dissatisfied with this decree, these parties
sued out a writ of error from the Supreme Court

of the United States. Upon a hearing in that
Court it was held, reversing the decree of this
Court, that the fifth section of the Act of 1877, in
so far as it gave priority to home creditors over
creditors of the same class of other States of
the Union, was in violation of the second section
of the fourth article of the Constitution of the
United States, which provides that "the citizens
of each State shall be entitled to all privileges
and immunities of citizens in the several States;"
but it also held that a corporation created under
the laws of another State of the United States
was not a "citizen" within the meaning of this
clause of the Constitution. The result was that
a judgment was entered affirming the judgment of
this Court as to the Hull Coal and Coke Com-
pany and reversing it as to C. G. Blake and
Rogers, Brown & Co., and remanding the cause
for further proceedings not inconsistent with the
opinion delivered in that Court. This opinion is
reported in Vol. 172, at p. 239, of United States
Supreme Court Reports.

The respective counsel of Blake and Rogers,
Brown & Co. and of the Tennessee creditors and
alien creditors of this corporation differ radically
in their construction of the opinion and mandate.
The contention for the first named creditors is
that the judgment of the Supreme Court of the
United States places them in the same class with
the Tennessee creditors, and that with the latter

they are entitled to full satisfaction of their claims before the Hull Coal and Coke Company, and the creditors who are residents of foreign countries are let in to share in the distribution of the assets of this corporation. On the other hand, the contention of the Tennessee creditors and of the creditors who are residents of foreign countries, is that the mandate of that Court is fully satisfied when these Ohio creditors are permitted to participate as general · creditors in this distribution, without priority over any one, and that when they have received their *pro rata* on the basis of all creditors being included, then they shall stand aside, and the Tennessee creditor, taking under the Act of 1877, are to be satisfied, and when this is done, then the Hull Coal and Coke Company and these creditors residing in foreign countries take *pro rata* of the balance of the assets, if any.

Under this contention, the claims of all creditors, without regard to this statutory preference, are to be tabulated for the purpose of ascertaining the *pro rata* to be paid to each, and when so ascertained and the shares of these Ohio creditors are paid to them, the whole of the balance of the assets of the corporation must be applied, if need be, to the extinguishment of the Tennessee claims, and thereafter as already indicated. The insistence of the Ohio creditors is rested upon the opinion of that Court, the gist of which is found in the following paragraph:

"We adjudge that when the general property and assets of a private corporation, lawfully doing business in a State, are in course of administration by the courts of such State, creditors who are citizens of other States are entitled, under the Constitution of the States, to stand upon the same plane with creditors of like class who are citizens of such State, and cannot be denied equality of right simply because they do not reside in that State but are citizens residing in other States of the Union. The individual plaintiffs in error were entitled to contract with this British corporation, lawfully doing business in Tennessee, and deemed and taken to be a corporation of that State; and no rule in the distribution of its assets among creditors could be applied to them as resident citizens of Ohio, and because they were not citizens of Tennessee, that was not applied by the Courts of Tennessee to creditors of like character who were citizens of Tennessee." 172 U. S. Rep., 259.

It is contended by these creditors that in this paragraph the Court, in express terms, announced the rule of equality between themselves and the Tennessee creditors, and that this equality can only be secured by giving them the same preference in distribution which the latter creditors have secured to them under the statute.

On the other hand, the creditors citizens of Tennessee and the creditors who are citizens of for-

eign countries, as well as the Hull Coal and Coke Company, insist that the Supreme Court of the United States, by its opinion, has expressly recognized the fifth section of the Act of 1877 as within the constitutional power of the Legislature of the State, save as it sought to place in one inferior and subordinate class creditors who were citizens of other States of this Union, and that by the express terms of that Act the home creditors are preferred, and that to give these Ohio creditors the same preference would be to do so when not only they are not named in the Act, but when they have successfully impeached as unconstitutional that part of it which refers to the class of creditors to which they belong.

It is further insisted by them that the Supreme Court of' the United States did not, by its mandate, intend to direct this Court to interpolate the Act of 1877, with a provision giving preference to creditors who had repudiated it, but that its mandate is fully complied with when this Court, in favor of the Ohio creditors, directs an administration of the assets of this insolvent corporation so as to give them full and proportionate shares, as if this Act was not in existence, and that having thus done equity in their favor, the fifth section of this Act immediately becomes operative, under the terms of which complainants, as preferred creditors, work out a satisfaction of their claims.

A majority of the Court adopt this latter view, believing it to be a sound construction of the mandate, and a decree will be entered in accordance with it. In this view I do not concur.

While it is possible the Supreme Court of the United States did not have in mind this phase of the question, yet I think in its opinion there is laid down in general, but clear and unmistakable terms, a rule under which the Ohio creditors are entitled to what they now claim. That Court has said that, so far as they were concerned, the fifth section of the Act was void, because violative of that clause of the Federal Constitution which provides, "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," and the case has been remanded to this Court, with direction that we see no advantage accrues to home creditors over the Ohio creditors. It is evident that administering the assets as it is now adjudged shall be done, a valuable "privilege" is secured to the Tennessee creditors, of which the Ohio creditors are deprived. I think this is in the face of the opinion and mandate.